UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JASON D.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　　Defendant. | Case No. 24-cv-12794<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
(ECF NOS. 10, 12)**

## I.   Introduction

Plaintiff Jason D. appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act.  Both parties consented to the undersigned conducting all proceedings under 28 U.S.C. § 636(c) and moved for summary judgment.  ECF No. 7; ECF No. 10; ECF No. 12.  After review of the record, the Court:

- **DENIES** Plaintiff's motion (ECF No. 10);

- **GRANTS** the Commissioner's motion (ECF No. 12); and

- **AFFIRMS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g).

## II. Background

### A. Plaintiff's Background and Disability Application

Born in September 1976, plaintiff was 44 years old when he applied for DIB and SSI in June 2021, with an alleged disability onset date of May 24, 2021. ECF No. 8-1, PageID.61, 70, 245-246. He had past relevant work as a window cleaner. *Id.*, PageID.70, 267. Plaintiff claimed disability from a cyst in his spine, spinal stenosis, a cyst affecting fecal sack, a bulging disk, and numbness in left leg and hand. *Id.*, PageID.266.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled. *Id.*, PageID.72. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *Id.*, PageID.24-30. Plaintiff timely filed for judicial review. ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c).

3

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ found plaintiff not disabled. At the first step, she found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 24, 2021. ECF No. 8-1, PageID.63. At the second step, she found that plaintiff had the severe impairments of "degenerative disc disease of the lumbar and cervical spine, status-post fusion of T11 to L3 with subsequent fusion extension from T10 to pelvis and revision of construct with placement of new rods; left inguinal and umbilical hernias, status-post surgical repairs; and asthma." *Id.* Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.65-66.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform sedentary work,[2] except that:

> he can occasionally climb ramps or stairs, but he cannot climb ladders, ropes, or scaffolds; he can occasionally stoop, kneel, crouch, crawl, and balance as defined by the Selected Characteristics of Occupations; he must avoid exposure to

---

[2] Sedentary work involves lifting or carrying no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; standing or walking for two hours out of an eight-hour workday; and sitting for six hours out of an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Regulation (SSR) 83.10.

4

extreme cold, wetness, vibration, vibrating tools, unprotected heights, or moving mechanical parts; he cannot operate a motor vehicle within the scope of employment; he must avoid exposure to atmospheric conditions at levels greater than those found in an indoor work environment such as an office or retail store; he requires the use of a cane for ambulation to or from the workstation and for prolonged ambulation, but while using the cane, his free hand can be used to carry weight up to the exertional limits; and he is limited to simple and routine tasks with only work-related decision making and few, if any, workplace changes due to impaired concentration from his pain symptomatology.

*Id.*, PageID.66. At step four, the ALJ found that plaintiff could not perform past relevant work as a window cleaner. *Id.*, PageID.70. Even so, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined at the final step that there were jobs in significant numbers that plaintiff could perform, including positions as a telephone quotation clerk, a trimmer, and a final assembler. *Id.,* PageID.71.

### III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and

---

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff argues that (1) the ALJ failed to properly evaluate the medical source opinion of Ashley Weaver, N.P. and (2) the Appeals Council failed

to properly evaluate new and material evidence he submitted—a May 2024 CT scan of his lumbar spine. ECF No. 10, PageID.2107, 2111, 2119. Plaintiff also asserts that the ALJ erred because "she failed to consider whether Plaintiff was disabled for a closed-period up until July 2022." *Id.*, PageID.2116. The Court disagrees and affirms the ALJ's decision.

**B.**

Plaintiff first argues that the ALJ improperly evaluated Weaver's medical opinion. *Id.*, PageID.2112-2119. He begins this argument by directing the Court to his own testimony that "his pain was still debilitating despite undergoing two surgeries during the period-at-issue." ECF No. 10, PageID.2112. As the government notes, the ALJ found plaintiff's subjective allegations were not entirely supported by the record (ECF No. 8-1, PageID.68-69), a finding plaintiff does not challenge.

ALJs must explain the persuasiveness of all opinions from both treating and non-treating sources by considering several factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(a). "But the regulations only require ALJs to discuss the first two—supportability and consistency." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021). Under the supportability factor, the more relevant "objective medical evidence and supporting explanations presented by a medical source to support his or

7

her medical opinion," the more persuasive the medical opinion will be. §§ 404.1520c(c)(1), 416.920c(c)(1).  An opinion that is more consistent with the evidence from other medical sources and nonmedical sources is also more persuasive.  §§ 404.1520c(c)(2), 416.920c(c)(2).

Plaintiff argues the ALJ improperly evaluated the opinion of Weaver by "cherry-picking" the record and not offering sufficient rationale for her decision.  The Court disagrees.

In August 2023, Weaver opined that plaintiff had these limitations: "he can lift or carry 10 pounds for an occasional maximum of 10 minutes"; "he can stand or walk 10 to 15 minutes without interruption for a total of 90 minutes in a regular 8-hour day"; "he can sit 10 to 15 minutes without interruption for a total of 90 minutes in a regular 8-hour day"; "he needs to take unscheduled breaks of 30 to 45 minutes to rest every 10 to 15 minutes during the day for a total of 4 hours in an 8-hour day"; "he has significant limitations with reaching, handling, or fingering as he is unable to grasp with either hand and he cannot use his fingers or arms to perform any fine manipulations or reaching"; "he can never twist, stoop, crouch, or squat"; and "his experience of pain or other symptoms is severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks."  *Id.*, PageID.2044-2048.

    The ALJ found Weaver's opinion "mostly unpersuasive because it is generally not consistent with or supported by aforementioned evidence of record" and gave several examples.  ECF No. 8-1, PageID.70.  She explained that Weaver's "own examination of [plaintiff's] extremities did not identify any abnormalities" and that the record included no evidence that plaintiff could not "grasp with his hands, perform any fine manipulations with his fingers, or do any reaching with his arms."  *Id.* (citing ECF No. 8-2, PageID.2023-2029).

    Finding Weaver's assessment of plaintiff's exertional limitations unpersuasive, the ALJ noted that the "most recent physical examinations contained in the record from [plaintiff's] former primary care provider and Nurse Weaver also do not document any respiratory, musculoskeletal, or neurological abnormalities."  *Id.*, PageID.68.  The ALJ also noted that Weaver relied only on x-ray studies from a "previous provider," who was unspecified, to support her assessment of exertional limitations.  *Id.*; *see also* PageID.2046-2048.  As the ALJ stated, the "most recent x-ray study contained within the record from July 2022 found stable post-surgical changes of posterior lumbar fusion extending from T10 to the pelvis with no evidence of periprosthetic loosening or fracture so it is unclear why this

9

evidence would support her assessment of exertional limitations." *Id.*, PageID.70.

Addressing the x-ray the ALJ cited, plaintiff accuses the ALJ of "cherry-picking" the record. Allegations that an ALJ "cherry-picked" the record seldom succeed because crediting them would require a court to re-weigh the evidence. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). Plaintiff faults the ALJ for failing to mention that the July 2022 x-ray study noted an "[u]nchanged compression deformity at the superior endplate of L1." ECF No. 10, PageID.2115; ECF No. 8-2, PageID.1516. But the ALJ did not need to discuss every portion of that study. *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("The ALJ's failure to discuss those observations does not indicate that they were not considered."). The question for the Court is whether the ALJ's decision is supported by substantial evidence, and plaintiff fails to meet her burden of showing that the unchanged compression deformity contradicts the ALJ's findings about his exertional limitations. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant…retains the burden of proving her lack of residual functional capacity.").

10

In finding Weaver's opinion unpersuasive, the ALJ also explained that Weaver's assessment that plaintiff needs unscheduled rest breaks, and has a complete inability to twist, steep, crouch, or squat, is "not consistent with or supported by her own treatment reports or the remaining evidence of record as a whole."  ECF No. 8-1, PageID.70.  An ALJ may properly reject a treating source opinion because it is not supported by the source's own treatment notes.  *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010).

### C.

In challenging the ALJ's evaluation of Weaver's opinion, plaintiff cites a May 2024 CT scan that was submitted to the Appeals Council after the ALJ's decision.  ECF No. 10, PageID.2116 ("[C]ontrary to the ALJ's findings, plaintiff's updated imaging confirmed that his prior surgeries did not resolve plaintiff's impairments and did not provide sustained relief.").  The May 2024 CT scan showed " discontinuity/fracture of the transpedicular longitudinal elements at the L4 level" and that the "superior aspect of the right rod is not connected to the L3 connecting device.  Please correlate clinically."  *Id.*, PageID.32.

That CT scan was not in the record before the ALJ at the time of her decision and thus cannot be considered for purposes of the substantial

11

evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). But a court may remand a matter for the Commissioner to consider evidence that is "new," and "material" if the plaintiff shows "good cause" for failing to present the evidence to the ALJ. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).

New evidence is material only if there is a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence. *Id*. Evidence reflecting an applicant's aggravated or deteriorated condition is not material because it is intrinsically irrelevant to whether he was disabled on or before the alleged date of disability. *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). If a plaintiff believes he can establish disability after the decision, his remedy is to apply for benefits for the later period. *Id*. The burden of showing that remand is appropriate is on the claimant. *Foster v. Halter,* 279 F.3d at 357.

No one disputes that the CT scan is new, as it was taken nearly eight months after the ALJ's decision. But remand is not warranted because the scan is not material. Plaintiff asserts that the CT scan shows that his "prior surgeries did not resolve Plaintiff's impairments" and "supported Plaintiff's allegations of continued dysfunction and supported Weaver's medial

opinion." ECF No. 10, PageID.2120.  Yet the scan sheds light only on plaintiff's condition after the ALJ's decision and is not material to the relevant period.  *See Sizemore*, 865 at 712; *see also Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**D.**

Plaintiff also argues that the ALJ erred by overlooking whether he was disabled for a closed period from May 2021 until July 2022.  ECF No. 10, PageID.2116-2117.  Although the "Act itself does not provide for a closed period of benefits," the Sixth Circuit has found that closed-period benefits may be awarded.  *Myers v. Richardson,* 471 F.2d 1265, 1267 (6th Cir. 1972).

But plaintiff's argument lacks merit because he "did not ask the ALJ to consider a closed period of disability."  *Pulasky v. Comm'r of Soc. Sec.*, No. 20-12658, 2022 WL 722334, at *5 (E.D. Mich. Feb. 4, 2022); *see also Hein v. Saul*, No. 18-1459, 2019 WL 4509381, at *6 (M.D. Fla. Sept. 19, 2019) ("A claimant's failure to request consideration of a closed period of disability precludes the claimant from arguing on appeal to the district court that the ALJ erred by failing to consider the same."); *Ward v. Kijakazi*, No. 20-1315, 2021 WL 3037711, at *2 (W.D. Pa. July 19, 2021) ("[T]he ALJ did

not err in failing to explicitly address a closed period of disability when that request was not made before the ALJ.").

Besides, the ALJ concluded that plaintiff had "not been under a disability within the meaning of the Social Security Act from May 24, 2021 through the date of this decision." (ECF No. 8-1, PageID.61). So the ALJ "implicitly" found that plaintiff "was not entitled to a closed period of disability." *Shannon C. v. Comm'r of Soc. Sec.*, No. 20-0186, 2022 WL 7284554, at *10 (W.D. Ky. July 20, 2022).

## IV.   Conclusion

The Court **DENIES** plaintiff's motion for summary judgment (ECF No. 10), **GRANTS** the Commissioner's motion for summary judgment (ECF No. 12), and **AFFIRMS** the ALJ's decision under sentence four of § 405(g).

Dated: September 25, 2025

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 25, 2025.

s/Davon Allen
DAVON ALLEN
Case Manager